UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIKA MACIAS AND CYNTHIA RICH,<br><br>Plaintiff,<br><br>v.<br><br>MYRON LANGE,<br><br>Defendant. | Case No.: 14cv2763-GPC(JMA)<br><br>**ORDER GRANTING IN PART PLAINTIFF ERIKA MACIAS' MOTION FOR ATTORNEYS' FEES AND COSTS AND DENYING PLAINTIFF ERIKA MACIAS' MOTION FOR INJUNCTIVE RELIEF**<br><br>[Dkt. No. 157.] |

Before the Court is Plaintiff Erika Macias' motion for attorneys' fees and costs and a motion for entry of injunctive relief. (Dkt. Nos. 156, 157.) Defendant did not file an opposition. Macias filed a reply arguing that the Court should grant both motions for Defendant's failure to file an opposition. (Dkt. No. 169.) Based on the reasoning below, the Court GRANTS in part Plaintiff Macias' motion for attorneys' fees and costs and DENIES her motion for injunctive relief.

/ / / /

/ / / /

/ / / /

1

**Background**

On November 19, 2014, Plaintiffs Erika Macias ("Macias") and Cynthia Rich[1] ("Rich") filed a complaint against Defendant Myron Lange ("Defendant") for violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq*.; California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code sections 12927, 12955, *et seq*.; California Civil Code section 51.9 ("section 51.9"); California Ralph Act, ("Ralph Act"), Cal. Civ. Code section 51.7; California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code section 51; breach of the covenant of quiet use and enjoyment; and invasion of privacy. (Dkt. No. 1, Compl.) Defendant is the owner of about eight rental houses and apartments in the San Diego area. Macias was a tenant of Defendant from 2001 until the end of 2013.

On April 1, 2016, the Court denied Defendant's motion for summary judgment as to Macias' claims. (Dkt. No. 63.) On May 16, 2016, defense counsel sought to withdraw as counsel for Defendant. (Dkt. No. 89.) On June 1, 2016, the Court conditioned defense counsel's withdrawal on participation with Plaintiff's counsel in lodging a pretrial order. (Dkt. No. 92.) Once a pretrial order was lodged, the Court granted defense counsel's motion to withdraw. (Dkt. No. 93.)

On June 10, 2016, at the pretrial conference, Defendant, now proceeding *pro se*, orally requested that his prior waiver of a jury trial be withdrawn. (Dkt. No. 94.) After briefing on the issue, the Court granted Defendant's request to withdraw his waiver of jury trial. (Dkt. Nos. 99, 100, 101, 103.) Motions in limine were then held on October 7, 2016. (Dkt. No. 110.)

On October 17 and 18, 2016, a jury trial was held as to Plaintiff Erika Macias' claims against Defendant Myron Lange. (Dkt. Nos. 122, 123.) On October 18, 2016, a

---

[1] On October 14, 2016, the Court severed Plaintiff Cynthia Rich's claims from the jury trial set for October 17, 2016. (Dkt. No. 120.) Then, on March 28, 2017, the Court granted Rich's motion to dismiss with prejudice under Federal Rule of Civil Procedure 41(a)(2). (Dkt. No. 153.)

jury verdict was entered on Macias' claims.  (Dkt. No. 129.)  Of the remaining five causes of action[2], the jury found in favor of Plaintiff on the claim for hostile housing environment under the Fair Housing Act and California Civil Code section 51.9 ("Civil Code section 51.9").  (Id.)  The jury awarded Plaintiff $35,320.00 in compensatory damages under the FHA and $20,000 in compensatory damages under Civil Code section 51.9.  (Id. at 4, 6[3].)  The jury found in favor of Defendant on the remaining claims for violations of the Ralph Act, quid pro quo harassment under the Fair Housing Act and for gender discrimination under the Unruh Act.  (Id. at 2, 3, 5.)  The jury also found that punitive damages were not warranted.  (Id. at 7.)  Judgment was entered on March 29, 2017.  (Dkt. No. 154.)  On April 25, 2017, Defendant filed a notice of appeal.[4]  (Dkt. No. 160.)

## Discussion

Pursuant to Federal Rule of Civil Procedure ("Rule) 54, Macias seeks attorneys' fees as the prevailing party under the FHA and Civil Code section 51.9 in the amount of $97,316.50 for the Legal Aid Society of San Diego, Inc. ("Legal Aid Society") and costs in the amount of $4,117.35.[5]  (Dkt. No. 157 at 8; Dkt. No. 157-3, Butler Decl., Ex. 1 at 1.)  She also seeks $86,500.00 in attorney's fees for Brancart & Brancart and non-taxable costs in the amount of $5,328.00.[6]  (Dkt. No. 157-10, Brancart Decl., Exs. 1-2 at 2-31.)

---

[2] During trial, Macias voluntarily dismissed the claims for breach of the covenant of quiet use and enjoyment, and invasion of privacy.  (Dkt. No. 157 at 12.)

[3] Page numbers are based on the Court's CM/ECF pagination.

[4] On April 25, 2017, Defendant filed a notice of appeal.  (Dkt. No. 160.)  When an appeal has been filed, a district court may rule on a motion for attorney's fees, defer its ruling, or dismiss the motion without prejudice.  Fed. R. Civ. P. 54, comments to 1993 amendment.  No opposition has been filed; thus, the Court will rule on the motion for attorneys' fees.

[5] In her brief, Plaintiff seeks $15,612.08 in costs and fees for Legal Aid Society, but the supporting declaration only provides support for $4,117.35.  (Dkt. No. 157-3, Butler Decl., Ex. B.)  It appears that the amount may have been adjusted to take into account the Clerk of Court's award of taxable costs in the amount of $7,432.18. (Dkt. Nos. 155, 166.)

[6] **Error! Main Document Only.**While the motion asserts that the amount of costs sought by Brancart & Brancart is $5,728.00, (Dkt. No. 157 at 22), the exhibit attached to Brancart's declaration states that it

The FHA provides that a prevailing party may be awarded reasonable attorneys' fees and costs. 42 U.S.C. § 3613(c)(2). Moreover, a defendant who violates Civil Code section 51.9 is also liable for attorneys' fees. Cal. Civil Code § 52(b)(3). Because the jury found in favor of Plaintiff under the FHA and Civil Code section 51.9 claims, Plaintiff is a prevailing party and entitled to attorneys' fees and costs under both the federal and state statute.

### A. Attorneys' Fees

Attorney's fees are based on the "lodestar" calculation which undergo a similar analysis under both federal and state law. See Hensley v. Eckerhardt, 461 U.S. 424, 433 (1983); Ketchum v. Moses, 24 Cal. 4th 1122, 1131 (2001); Lane v. Facebook, Inc., No. C 08-3845 RS, 2010 WL 2076916, at *1 (N.D. Cal. May 24, 2010) (lodestar approach similar under federal and state law). The Court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." Hensley, 461 U.S. at 433.

Under federal law, once calculated, the lodestar amount is presumptively the reasonable fee amount. Van Gerwen v. Guarantee Mut. Life Ins., 214 F.3d 1041, 1045 (9th Cir. 2000). A multiplier may then be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high. Id. (citations omitted). Under state law, the lodestar may be adjusted by a multiplier based on such factors as the contingent nature of the fee award and the novelty and difficulty of the questions involved. Ketchum, 24 Cal. 4th at 1132.

Plaintiff has the burden to establish entitlement to fees and provide supporting evidence. See Hensley, 461 U.S. at 437. The Court may reduce an award based on

---

seeks $5,328.00 in non-taxable costs. (Dkt. No. 157-9 at 31.) The Court relies on the exhibit supported by a declaration for the specific amount of costs sought by Brancart & Brancart.

4

inadequate documentation of hours or rates requested. Id. at 433. Once the applicant submits evidence of the appropriate hours spent on litigation, "the party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged." Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992).

### 1. Reasonable Hourly Rate

Plaintiff seeks rates of $320.00 per hour for Attorney Branden Butler, (Dkt. No. 157-1, Butler Decl. ¶ 6), $295.00 per hour for Attorney Rosalina Spencer, (Dkt. No. 157-4, Spencer Decl. ¶ 6), $500.00 per hour for Attorney Christopher Brancart, (Dkt. No. 157-9, Brancart Decl. ¶ 14), and $175.00 per hour prior to December 1, 2016 and $200.00 after December 1, 2016 for Attorney Danielle Tailleart. (Dkt. No. 157-6, Tailleart Decl. ¶ 5).

"When assessing a reasonable hourly rate under both federal and state law, a court must consider the prevailing market rate charged by attorneys of comparable experience, expertise, and skill for comparable work." Coles v. City of Oakland, No. C03-2961 TEH, 2007 WL 39304, at *4 (N.D. Cal. 2007) (citing Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984); Children's Hosp. & Med. Ctr. v. Bonte, 97 Cal. App. 4th 740, 783 (2002)). Courts look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008); PLCM Grp. v. Drexler, 22 Cal. 4th 1084, 1095 (2000). Generally, the relevant community is the "forum in which the district sits." Camacho, 523 F.3d at 979. The moving party has the burden to produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987). Affidavits by the plaintiff's counsel and other counsel concerning the prevailing fees in the community, and rate determination in other cases, are satisfactory evidence of the prevailing market rate. United Steelworkers of America v. Phelps Dodge

Corp., 896 F.2d 403, 407 (9th Cir. 1990).

Here, Plaintiff provides declarations of each counsel detailing their education, years of practice and experience in the area of fair housing law. (Dkt. Nos. 157-1, 157-4, 159-6, 157-9.) She also includes declarations of other counsel in the community and citation to cases supporting these rates. (Dkt. No. 157-10 at 32-54.) Based on these documents, the Court concludes that Plaintiff's counsels' hourly rates are reasonable.

### 2. Hours Reasonably Expended

"Under both federal and state law, an award of attorneys' fees should include compensation for all hours reasonably spent on the litigation, absent circumstances rendering an award unjust." Coles, 2007 WL 39304, at 8 (citing Hensley, 461 U.S. at 429; Serrano v. Unruh, 32 Cal. 3d 621, 624, 639 (1982)). The district court has wide discretion in determining the reasonableness of attorney's fees. Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992); Montgomery v. Bio-Med Specialties, Inc., 183 Cal. App. 3d 1292, 1297 (1986).

The moving party bears the burden of documenting the appropriate hours spent in the litigation and submit evidence in support of the hours worked. Hensley, 461 U.S. at 433. Counsel should exclude hours that are "excessive, redundant or otherwise unnecessary." Id. at 434. The Court should decrease the hours that were not "reasonably expended." Id. The opposing party must provide "submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." Gates, 987 F.2d at 1397-98 (citing Blum v. Stenson, 465 U.S. 886, 892 n. 5 (1984)); McGrath v. County of Nevada, 67 F.3d 248, 255 (9th Cir. 1995) (citations omitted) (there must be evidence to challenge the accuracy and reasonableness of the hours charged). The party opposing fees must specifically identify defects or deficiencies in the hours requested; conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees. Cancio v. Fin. Credit Network, Inc., No. C04-03755 THE, 2005 WL 1629809, at *3 (N.D. Cal. July 6, 2005).

Even if the opposing party has not objected to the time billed, the district court "may not uncritically accept a fee request," but is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. Common Cause v. Jones, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002) (citing Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1385 (9th Cir. 1984)); see also McGrath, 67 F.3d at 254 n.5 (noting that court may not adopt prevailing party's representations without conducting an independent review of the fee application). When the district court makes its award, it must provide a "concise but clear" explanation of its reasons. Hensley, 461 U.S. at 437.

If a plaintiff is only partially successful in the case, he or she may not recover attorney's fees for work on unsuccessful claim that are not related to the successful ones. Hensley, 461 U.S. at 434-35. Apportionment is required when disproportionate time is spent against each defendant in order to ensure that a "defendant is not liable for a fee award greater than the actual fees incurred against that defendant." Jones v. Espy, 10 F.3d 690, 691 (9th Cir. 1993). Despite the general rule of apportionment, it might not be required if "it is impossible to differentiate between work done on claims." Gracie v. Gracie, 217 F.3d 1060, 1069-70 (9th Cir. 2000) (where "claims are so inextricably intertwined that even an estimated adjustment would be meaningless.") Some cases involve claims for relief that involve a common core of facts or are based on related legal theories. Hensley, 461 U.S. at 435. In these cases, counsel's time will be spent generally to the litigation as a whole making it difficult to divide the hours spent on a claim by claim basis. Id. In such a case, the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. If a plaintiff has obtained excellent results, full recovery is allowed because an enhancement may be justified. Id. Therefore, just because plaintiff did not prevail on every contention raised in the lawsuit, does not mean the fee award should be reduced. Id. "[T]he most critical factor is the degree of success obtained." Id. at 436. Moreover, the United States Supreme Court has rejected a mathematical approach based

on the total number of issues a party prevails in a case.  See id. at 435 n. 11 (rejecting mathematical approach comparing the total number of issues in the case with those actually prevailed upon because it provided little guidance in determining what is a reasonable fee in light of all the relevant factors).

Plaintiff acknowledges that she had partial success prevailing on two out of five causes of action but she argues that all claims, including the two withdrawn claims of breach of the covenant of quiet enjoyment and invasion of privacy, were all based on the same course of conduct and common set of facts so that the time spent on her unsuccessful or withdrawn claims cannot be separated from her successful claims.  Each of the claims relied on the same exhibits and witnesses at trial.  The Court agrees.

All five cause of action presented to the jury prohibit some form of sexual harassment or sexual discrimination by a landlord.  For example, the FHA prohibits a hostile housing environment of sexual harassment in the landlord-tenant relationship.  42 U.S.C. §§ 3604, 3617.  Section 51.9 prohibits "sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff or engag[ing] in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe" in a landlord - tenant relationship.  Cal. Civ. Code § 51.9.  The Ralph Act protects persons from "any violence, or intimidation by threat of violence, committed against their persons" based on sexual discrimination.  Cal. Civil Code 51.7.  The Unruh Act provides that "all persons . . . are free and equal, and no matter what their sex . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civil Code § 51(b).   Finally, quid pro quo sexual harassment occurs when housing benefits are explicitly or implicitly conditioned on sexual favors."  Quigley, 598 F.3d at 947 (quoting Honce, 1 F.3d at 1089).

Therefore, all five claims are inextricably intertwined and based on the same underlying conduct such that it is impossible to differentiate the work done on each claim

as the same evidence supports all the five claims.[7] Similarly, the withdrawn claims of breach of the covenant of quiet enjoyment and invasion of privacy were also based on the same evidence as the other five claims presented at trial. Invasion of privacy requires a showing that the defendant intentionally intruded into a place to which the plaintiff has a reasonable expectation of privacy, and the intrusion occurred in a manner highly offensive to a reasonable person. Hernandez v. Hillsides, Inc., 47 Cal. 4th 272, 285 (2009). Breach of the covenant of quiet enjoyment requires a showing that defendant substantially interfered with Macias' right to use and enjoy the rental premises. See Andrews v. Mobile Aire Estates, 125 Cal. App. 4th 578, 588 (2005). Plaintiff utilized the facts supporting the sexual harassment causes of action to also support her claims for invasion of privacy and breach of the covenant of quiet enjoyment. Therefore, the Court concludes that fees for the successful, unsuccessful and withdrawn claims cannot be apportioned.

The Court next considers whether Macias obtained excellent results even though she did not succeed on all her claims. The court is to consider whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Hensley, 461 U.S. at 434. A district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. at 435. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Id. In making this determination, the Court must consider not only the amount of damages but the nonmonetary results Macias achieved for herself and other members of society. Morales v. City of San Rafael, 96 F.3d 359, 365 n. 12 (9th Cir. 1996). The court should consider whether the plaintiff has "affected a change in policy or a deterrent to widespread civil

---

[7] A review of the complaint reveals that all seven causes of action are relying on the same facts. (Dkt. No. 1, Compl. at 7-8.) Each cause of action references the same alleged facts to support each cause of action. (Id.)

rights violations." McCown v. City of Fontana, 565 F.3d 1097, 1105 (9th Cir. 2009).

Here, Plaintiff achieved excellent results as she obtained a judgment against Defendant in the amount of $55,320.00 and prevailed on her key claim of sexual harassment under the Fair Housing Act. Her success will serve as a deterrent of continued sexual harassment by Defendant towards current and future female tenants of his eight rental properties. This constitutes excellent results and she is entitled to recover attorney's fees for her interrelated successful, unsuccessful and withdrawn claims.

Plaintiff has also provided detailed billing records to support her attorneys' hours. Her attorneys acknowledge that certain entries were excluded as they were not related to the unsuccessful or withdrawn claims. For example, they made a substantial reduction in their time to account for work performed on behalf of severed plaintiff Rich and any work done to develop Defendant's financial condition which was part of the unsuccessful punitive damages claim. (Dkt. No. 157 at 13-14; see also Dkt. No. 157-10, Brancart Decl., Ex. 2 at 26.) Furthermore, Plaintiff's counsel did not bill for any paralegal work spent working on the case which are typically a part of attorney's fees applications. See Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571, 580 (2007) (paralegal fees can be reimbursed under attorney's fees); (Dkt. No. 157-1, Butler Decl. ¶ 7; Dkt. No. 157-4, Spencer Decl. ¶ 7; Dkt. No. 157-9, Brancart Decl. ¶ 15; Dkt. No. 157-6, Tailleart Decl. ¶ 6.) Also, to avoid duplication, each Legal Aid attorney did not bill for time spent conferring with co-counsel Brancart or in reviewing emails or communication from Brancart. (Dkt. No. 157-4, Spencer Decl. ¶ 7; see Dkt. No. 157-6, Tailleart Decl. ¶ 6; Dkt. No. 157-1, Butler Decl. ¶¶ 7-8[8].)

Despite the exclusion of these fees, after the Court's independent review, it concludes that some entries remain excessive and/or duplicative. First, the Court questions the utilitzation of four attorneys at trial against a single pro per defendant with

---

[8] While Plaintiff's motion cites to paragraphs 7-9 of the Butler declaration to support her assertion, there is no paragraph 9. (See Dkt. No. 157-1, Butler Decl.)

no legal experience. While Defendant was represented by counsel until June 6, 2016 when the Court granted defense counsel's motion to withdraw, after June 6, 2016, the Court concludes that having four attorneys attend trial was excessive. The docket indicates that only Attorneys Butler and Spencer made appearances at the trial. (Dkt. Nos. 122, 123.)

Therefore, as to Legal Aid Society of San Diego, the Court declines to award attorney's fees for Tailleart's 19 hours of attendance and strategy at trial at a rate of $200 per hour in the amount of $3,800.00. The Court also reduces by 50% the trial attendance of Butler and Spencer to 9.5 hours.[9] At a rate of $295.00 per hour, Spencer's attorney's fees will be reduced by $2,802.50 and at a rate of $320 per hour, Butler's attorney's fees will be reduced by $3,040.00.

The Court also finds that Brancart's work on preparing witness examinations are duplicative in Column Nos. 174 and 175 as the Legal Aid Society took the lead on preparing for the witnesses. (Dkt. No. 157-2, Butler Decl., Ex. A at 4.) Therefore, $1,250.00 shall be deducted.

In addition, both Attorney Butler and Attorney Spencer billed for preparing Macias' deposition and the Court finds them duplicative. Since Butler defended Macias' deposition, the Court declines to award 3 hours of Spencer's billing and reduces her attorney's fees in the amount of $885.00. (Dkt. No. 157-5, Spencer Decl., Ex. A at 1.) Next, as to Tailleart, the court search of Defendant's lawsuits and criminal records consisting of 20 hours shall be reduced to 6 hours in the amount of $2800.00.[10] (Id. at 2.)

Furthermore, the Court finds that some of Attorney Spencer's entries along with Brancart's work on the same tasks are excessive and duplicative. Spencer's 15.7 hours on drafting and editing an ex parte motion to compel Avi Waiche and Brancart's 1.9

---

[9] It appears that Brancart has excluded his time of observation at trial. (Dkt. No. 157-10, Brancart Decl. at 26.)

[10] The billing does not indicate whether Tailleart conducted the search before or after December 1, 2016. Therefore, the Court uses the higher $200 per hour rate to reduce her fees for this entry.

11

14cv2763-GPC(JMA)

hours work on the motion to compel, Column Nos. 62-64, are excessive and possibly duplicative. Therefore, the Court reduces Spencer's hours to 8 hours with the fees reduced by $2271.50, and reduces Brancart's hours by 1 hour in the amount of $500.00.

Next, Spencer's research and drafting a response to the order to show cause regarding joinder on January 29, 2017 consisting of 17.2 hours and Brancart's revision, research and drafting of the OSC of 6.1 hours, Column Nos. 88-91, are duplicative and excessive. Thus, the Court reduces Spencer's hours to 8 hours, reducing her fees by $2,714.00 and reducing Brancart's hours to 3 hours which reduces his fees by $1,500.00.

Lastly, the Court notes that while Plaintiff claims that the attorney's fees and costs previously awarded to Plaintiff by the Magistrate Judge are not included in their billing records, (Dkt. No. 157 at 24), the Court notes that there is a duplication of fees by Brancart & Brancart and it has included entries that were awarded in the Magistrate Judge's order. On May 11, 2016, Magistrate Judge Adler issued an order directing the payment of expenses under Rule 37. (Dkt. No. 84.) In that order, the Magistrate Judge sanctioned Defendant for discovery violations in the amount of $3,450.00 in attorney's fees and $25 in costs. (Id. at 5.) While it appears that Attorney Spencer has removed from the billing records the award of her attorney's fees concerning the discovery violation, it appears that Attorney Brancart has billed for the attorney's fees he was awarded. (Compare Dkt. No. 73-1, Brancart Decl., Ex. 1 at 4 with Dkt. No. 157-10, Brancart Decl., Ex. 2 at 17.) The Magistrate Judge awarded expenses incurred in "actually bringing their motion to compel", did not include any payment of expenses pre-dating the February 2016 motion to compel, and found that the time spent preparing the motion to compel was excessive in relation to the simple, straightforward nature of the motion which required very little research. (Dkt. No. 84 at 4-5.) Therefore, the Court finds that the amounts in column nos. 106, 108[11], 112, 114, 115, and 116, (Dkt. No. 157-

---

[11] **Error! Main Document Only.** The Court notes that column 108 indicates a charge of $50.00 for .1 hours of work on March 7, 2016. (Dkt. No. 157-10, Brancart Decl., Ex. 1 at 16.) However, in the

10, Brancart Decl., Ex. 2 at 16-17), of Brancart's billing records are duplicative and reduces Brancart & Brancart's attorney's fee by $1,000.00.

Therefore, based on the Court's independent review, it concludes that Plaintiff is entitled to attorneys' fees in the lodestar amount of $79,003.50 for Legal Aid Society and $82,250.00 for Brancart & Brancart.

## C. Lodestar Adjustment

Under federal law, there is a strong presumption that the lodestar is a reasonable fee amount. Van Gerwen, 214 F.3d at 1045. But the lodestar may be adjusted up or down based on the Kerr[12] factors. However, Plaintiff does not seek an adjustment based on the Kerr factors stating that the "*Kerr* factors do not suggest further adjustment to the lodestar." (Dkt. No. 157 at 20.)

Unlike federal law, California law allows for a multiplier of the lodestar to compensate for the risk of contingent representation. Ketchum, 24 Cal. 4th at 1132. The lodestar may be adjusted by the court based on "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." Id. The Ninth Circuit has "held that when a plaintiff succeeds on both federal and state claims that support a fee award, the state-law multiplier is available." Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1112 (9th Cir. 2014) (citing

---

billing records before the Magistrate Judge, Brancart indicated there was no charge for the March 7, 2016 entry of .1 hours. (Dkt. No. 73-1, Brancart Decl. Ex. 1 at 4.) Since Brancart is charging for the entry in the instant motion, the Court includes that amount as part of the reduction.

[12] **Error! Main Document Only.**Kerr factors include "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975). In a subsequent case, the Ninth Circuit has held that the issue of whether the fee is fixed or contingent is no longer a valid factor to consider in determining reasonable attorney's fees. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 n. 7 (9th Cir. 2011).

Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1478-79 (9th Cir. 1995)).

Here, it is not clear whether Plaintiff is seeking a multiplier based on contingency risk. She merely explains the reasons why contingency fee arrangements exist and that her attorney fees are only recoverable if she is successful, without presenting any legal authority that it is justified in this case at a particular multiplier amount. (Dkt. No. 157 at 20-21.) In fact, Plaintiff seeks attorney's fees in the amount of the lodestar calculation. Accordingly, the Court declines to adjust the lodestar based on the contingency fee multiplier.

**D. Costs**

Plaintiff seeks costs for Legal Aid Society in the amount of $4,117.35. (Dkt. No. 157-3, Butler Decl., Ex. B at 1.) On April 12, 2017, Macias filed her Bill of Costs, and on May 5, 2017, the Clerk of Court issued an order taxing costs in the amount of $7,432.18 to the Legal Aid Society. (Dkt. Nos. 155, 166.) In this motion, Legal Aid Society seeks costs of skip tracing witnesses, telephone fees, service of subpoenas, court research, obtaining certified copies of Defendant's property deeds and unlawful detainer actions, delivery fees, and investigative services. (Dkt. No. 157-3, Butler Decl., Ex. B at 1.)

Brancart & Brancart seeks non-taxable costs in the amount of $5,328.00. (Dkt. No. 157-9, Brancart Decl. ¶ 17; id., Ex. 2.) Such costs include document requests and copies, private investigator, postage and delivery charges, online investigation expenses, Westlaw legal research fees, and travel expenses to include airfair, lodging, car rental and parking at the airport.

FHA provides for the reimbursement of reasonable costs. 42 U.S.C. § 3613(c)(2). A prevailing party "may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" Harris v. Manhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (citations omitted); Int'l Woodworkers of America, Local 3–98 v. Donovan, 792 F.2d 762, 767 (9th Cir. 1985) (costs which are ordinarily billed to clients are routine under all other fee statutes).

Costs include telephone calls, postage, attorney travel expenses, skip tracing fees, photocopying expenses and computerized research. See Sierra Club v. E.P.A., 769 F.2d 796, 812 (D.C. Cir. 1985) (awarding costs for photocopying, postage, and telephone expenses); PNC Equipment Fin., LLC v. Forest Air, LLC, No. 14cv0081-EHK-CWD, 2014 WL 6673986, at *3 (D. Idaho Nov. 24, 2014) (skip tracing fees allowable as non-taxable cots); Wyatt Tech. Corp. v. Malvern Instruments, Inc., Case No. CV07-8298 ABC (RZx), 2010 WL 11404472, at *3 (C.D. Cal. June 17, 2010) (computerized research and document processing and messenger and delivery costs recoverable as non-taxable costs).

After a review of counsel's non-taxable costs, the Court concludes they are reasonable, and include tasks normally charged to a fee paying client, and GRANTS Plaintiff's motion for costs in the amount of $4,117.35 for Legal Aid of San Diego and $5,328.00 for Brancart & Brancart.

**E.   Injunctive Relief**

Pursuant to the FHA, Plaintiff seeks an injunction against Defendant enjoining him from the operation or management of any investment rental dwellings and if Defendant wants to own and operate investment rental dwellings requiring him to hire a professional manager. According to Macias, Defendant remains free to own as much rental property as he wishes, but he should not manage or operate any investment rental dwelling that would put him in a position of direct and immediate authority over a tenant.

The FHA provides,

> (1) In a civil action under subsection (a) of this section, if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages, and subject to subsection (d) of this section, may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate).

42 U.S.C. § 3613(c)(1). This section provides the district courts the power "it needs to fashion affirmative equitable relief calculated to eliminate as far as possible the discriminatory effects of violation of the Fair Housing Act." Park View Heights Corp. v. City of Black Jack, 605 F.2d 1033, 1036 (8th Cir.), cert. denied, 445 U.S. 905 (1979). Equitable remedies serve the purpose of eliminating the effects of past discrimination and preventing future discrimination. Id. at 1036 (addressing racial discrimination under the FHA). California law also holds that where an injunction is authorized by statute, "it is enough that the statutory conditions are satisfied." People v. Mel Mack Co., 53 Cal. App. 3d 621, 630 (1975) ("Defendants have no right to continue to violate the law.").

In general, to obtain a permanent injunction, a "plaintiff must demonstrate: (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction." Indep. Training and Apprenticeship Program v. Cal. Dep't of Indus. Relations, 730 F.3d 1024, 1032 (9th Cir. 2013) (citing eBay Inc. v. MercExch., LLC, 547 U.S. 388, 391 (2006)). "Injunctive relief . . . must be tailored to remedy the specific harm alleged." Lamb-Weston, Inc. v. McCain Foods, Ltd., 941 F.2d 970, 974 (9th Cir. 1991).

However, where a federal statute provides for injunctive relief to prevent a violation of the statute, the standard requirements for equitable relief need not be satisfied. Trailer Train Co. v. State Bd. of Equalization, 697 F.2d 860, 869 (9th Cir. 1983) (disagreeing with appellant's argument that the district court erred by not establishing the standard for equitable relief). The standard becomes whether the "trial court finds reasonable cause to believe that a violation of the federal statute has been, or is about to be, committed." Burlington N. R.R. Co. v. Dep't of Revenue, 934 F.2d 1064, 1075 (9th Cir. 1991) ("The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief.") (internal quotation marks and citation omitted); Atchison, T and S.F. Ry. Co. v. Lennen, 640 F.2d 255, 260 (10th Cir. 1981)

(quoting Shadid v. Fleming, 160 F.2d 752, 753 (10th Cir. 1947) ("where an injunction is authorized by statute it is unnecessary for plaintiff to plead and prove the existence of the usual equitable grounds, irreparable injury and absence of an adequate remedy at law. It is enough if the requirements of the statute are satisfied.").

Here, the jury reached a verdict that Defendant sexually harassed Macias as her landlord under the FHA and section 51.9. Therefore, a violation has occurred and equitable relief is warranted.

Even if the standard for a permanent injunction is required, Plaintiff has met that requirement. First, Plaintiff achieved success on the merits. As to irreparable harm, the Ninth Circuit has held that if a defendant has violated a civil rights statute, such as the Fair Housing Act, it is presumed that plaintiff has suffered irreparable injury from the fact of the defendant's violation. Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 827 (9th Cir. 2001) (citing Burlington N. R.R. Co., 934 F.2d at 1074; Gresham v. Windrush Partners, Ltd., 730 F.2d 1417, 1423 (11th Cir. 1984) (stating that "irreparable injury may be presumed from the fact of discrimination and violations of fair housing statutes")). In this case, irreparable injury is presumed based on Defendant's violations of the FHA and section 51.9.

Next, Plaintiff must also show that there is no adequate remedy at law. Continental Airlines v. Intra Brokers, Inc., 24 F.3d 1099, 1102 (9th Cir. 1994). If there is the possibility of future wrongful conduct, a legal remedy is inadequate. Orantes–Hernandez v. Thornburgh, 919 F.2d 549, 564 (9th Cir. 1990). Since civil rights statutes protect not only the litigant but also the public at large, there is a possibility that Defendant may engage in sexual harassment of his tenants. See City of Riverside v. Rivera, 477 U.S. 561, 574 (1986) (rejecting notion that a civil rights action for damages is nothing more than a private tort suit benefitting the individual plaintiff and noting that a civil rights plaintiff seeks to vindicate important civil and constitutional rights).

There is a strong public interest in ending sexual harassment in the landlord-tenant relationship. As Plaintiff asserts, Congress enunciated the policy of the FHA which is to

"to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. This applies to past as well as future discrimination. See Park View Heights Corp., 605 F.2d at 1036; Price v. Pelka, 690 F.2d 98, 101 (6th Cir. 1982) ("Private enforcement of the Fair Housing Act . . . not only vindicates the civil rights of the individual victim of discrimination, but promotes the public interest by eradicating housing discrimination. The eradication of housing discrimination is a policy that Congress considered to be of the highest priority.") (citing Traficante v. Metro. Life Ins. Co., 409 U.S. 205 (1972)).

Finally, as to the balance of hardships, the hardships weigh in favor of Plaintiff as her harm and the harm to the public are recognized as warranting injunctive relief. See 42 U.S.C. § 3613(c)(1).

An injunction must also be tailored to remedy the specific harm alleged. See Lamb-Weston, Inc., 941 F.2d at 974. "As in any equity proceeding, the scope of the remedy is determined by the nature and the scope of the legal violation." Rogers v. 66-36 Yellowstone Blvd. Co-op Owners, Inc., 599 F. Supp. 79, 84 (E.D.N.Y. 1984) (citations omitted). While Plaintiff argues that the injunction she proposes is narrowly tailored, it is not. The injunction sought by Plaintiff is overbroad as her injunction precludes Defendant's contact with both his male and female tenants. The claims brought by Plaintiff were sexual harassment claims made against her as a female. Enjoining Defendant's contact with his male tenants would not address the specific harm suffered by Plaintiff, a female. Next, the injunction sought by Plaintiff is overbroad as to time. She has not legally justified an unlimited time injunction requiring the Court to oversee the injunction for the lifetime of Defendant. Lastly, Plaintiff has not provided any caselaw to support the requirement that Defendant hire a professional manager, at his cost, that is certified as a California Certified Residential Manager by the California Apartment Association. As proposed, Plaintiff's injunction is overbroad. Accordingly,

////

////

the Court DENIES Plaintiff's motion for entry of injunctive relief.[13]

**Conclusion**

Based on the above, the Court GRANTS in part Plaintiff Macias' motion for attorneys' fees in the amount of **$79,003.50** to Legal Aid Society of San Diego, Inc. and **$82,250.00** to Brancart & Brancart. The Court awards costs in the amount of **$4,117.35** to Legal Aid Society of San Diego, Inc. and **$5,328.00** to Brancart & Brancart. The Court also DENIES Plaintiff Macias' motion for injunctive relief.

IT IS SO ORDERED.

Dated: June 6, 2017

Hon. Gonzalo P. Curiel
United States District Judge

---

[13] As discussed above, on the excellent results obtained by Plaintiff, the Court concluded that the jury verdict award will serve as a deterrent of continued violations of the FHA and section 51.9 by Defendant. Plus, the instant award of attorneys' fees and costs will serve as a further deterrent. The Court also recognizes that Macias' case involved one female tenant with unique circumstances where her contact with Defendant was not only as a tenant but also as someone who cleaned his rental properties, and a pattern or practice of Defendant's sexual harassment had not been established at trial. See Rogers, 599 F. Supp. at 82, 85 (recognizing that one violation of the FHA warrants an injunction but also recognizing that the injunction must be proportionate to the wrongdoing of one violation).